UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILISIA ANN LOWE,<br><br>               Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security,<br><br>               Defendant. | Case No. EDCV 12-1923 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.   SUMMARY

On November 8, 2012, plaintiff Milisia Ann Lowe ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 19, 2012 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 14, 2009, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 15, 116). Plaintiff asserted that she became disabled on January 1, 2002, due to paranoid schizophrenia, high blood pressure, liver problems, arthritis, and degenerative disc disease. (AR 136). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on March 9, 2011. (AR 27-42).

On April 1, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 15-22). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with spinal stenosis, depression, and anxiety (AR 17); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 17); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[2] (AR 18); (4) plaintiff had no past relevant work (AR 20); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically garment sorter and electronics worker (AR 21); and (6) plaintiff's allegations regarding her limitations were not credible to the extent

---

[2] The ALJ determined that plaintiff: (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could be on her feet for six hours in an eight-hour workday for 60 minutes at a time with a 2-3 minute sit break before she stands again; (iii) could sit for six hours in an eight-hour workday with normal breaks; (iv) was limited to simple repetitive tasks in a non-public work setting; (v) could have only occasional non-intense interactions with coworkers (less than 5) and supervisors; and (vi) would not miss work more than two times per month. (AR 18).

they were inconsistent with the ALJ's residual functional capacity assessment (AR 20).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

1  (4) Does the claimant possess the residual functional capacity to
2       perform claimant's past relevant work?  If so, the claimant is
3       not disabled.  If not, proceed to step five.
4  (5) Does the claimant's residual functional capacity, when
5       considered with the claimant's age, education, and work
6       experience, allow the claimant to adjust to other work that
7       exists in significant numbers in the national economy?  If so,
8       the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because, among other things, the ALJ failed properly to consider the written statement supplied by plaintiff's daughter, Clorisia Thompson.  (Plaintiff's Motion at 19-21).  The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### 1. Pertinent Facts

In a Third Party Function Report dated May 15, 2009, plaintiff's daughter, Clorisia Thompson, stated, *inter alia*, that plaintiff (i) is unable to sleep through the night and/or sleeps all day; (ii) needs help with dressing, bathing, caring for her hair and using the toilet; (iii) needs help or reminders for taking medicine, and some medications make plaintiff drowsy; (iv) does not prepare her own meals and, without help, "gets hurt" or "starts fires" in the kitchen; (v) can do some household chores "with monitoring"; (vi) is very anti-social and does not feel comfortable outside of the home; (vii) cannot go out alone; (viii) is unable to pay bills, count change, handle a savings account, or use a checkbook/money orders because she "needs monitoring at all times"; (ix) spends time with her relatives, mostly stays home, goes to church regularly but needs to be reminded to go places and needs someone to accompany her whenever she goes out; (x) has problems getting along with others, has mood swings from quiet, to violent, to depressed; (xi) has trouble with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and

getting along with others; (xii) has a hard time maintaining body weight; (xiii) is always forgetful (which interferes with completing tasks) and cannot seem to understand directions; (xiv) can walk 1-2 blocks before needing to rest 5-10 minutes; (xv) can pay attention only 20-30 minutes; (xvi) does not finish what she starts; (xvii) does not follow written or oral instructions well; (xviii) does not get along with authority figures well; (xix) does not handle stress or changes in routine well; and (xx) would "completely fall apart" without "continu[ous] monitoring." (AR 174-81).

At the March 9, 2011 hearing, plaintiff testified, *inter alia*, that she had "really bad pain," significant side effects from her medication, difficulty getting along with people, problems concentrating and finishing things, depression and mood swings. (AR 31-34).

In the administrative decision, the ALJ gave "very little probative weight" to the lay statements of Ms. Thompson, essentially because (1) "[Thompson] is not a medical professional or otherwise qualified to diagnose severe impairments or to assess their effect on [plaintiff's] ability to perform work-related activities"; and (2) because Thompson lives in the same household as plaintiff, "[she] has a financial interest in seeing that [plaintiff] receives disability benefits." (AR 20).

### 2. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462,

1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 3.   Analysis

As the above-stated facts reflect, the lay statements of Ms. Thompson are not only consistent with, and corroborate plaintiff's testimony regarding the extent of her symptoms and limitations, but they also reflect significant additional limitations. Such testimony was competent lay evidence that the ALJ was required to take into account unless he expressly determined to disregard it and gave sufficient reasons therefor. Nonetheless, the reasons the ALJ provided for rejecting the lay statements from Ms. Thompson were not adequate.

First, the fact that a lay witness is not a medical professional or other qualified expert is not a germane reason for rejecting otherwise competent lay evidence. See Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, . . . though not a vocational or medical expert, was not disqualified from rendering an opinion as to how [a claimant's] condition affects his ability to

perform basic work activities.") (citation omitted).  As a lay witness, Ms. Thompson was qualified to testify regarding the severity of plaintiff's impairments and to give an opinion regarding how those impairments affected plaintiff's ability to work.  See 20 C.F.R. § 416.913(d)(4) (evidence provided by relatives may be used to show "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work"); Bruce, 557 F.3d at 1116.

Second, the ALJ was not permitted to discredit Ms. Thompson's lay statements merely because, as plaintiff's daughter, she is an interested party.  See Regennitter, 166 F.3d at 1298 ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.") (citation and quotation marks omitted); see also Smolen v. Chater, 80 F.3d 1273, 4589 (9th Cir. 1996) (ALJ's rejection of lay testimony from "family witnesses" because such witnesses "were [] understandably advocates, and biased" . . . amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each [lay witness] who testified.").

Finally, the Court cannot conclude that the ALJ's error was harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1055-56.  At the hearing, the vocational expert testified, in pertinent part, that there were no jobs available if plaintiff (or a hypothetical individual with plaintiff's characteristics) needed to miss work more than two times per month.  (AR 41).  As noted above, Ms. Thompson's statements not only corroborate plaintiff's subjective symptom testimony but also reflect significant additional limitations.  Therefore, if fully credited, Ms. Thompson's statements could have caused a reasonable ALJ to reach a different disability determination. Accordingly, this Court cannot deem the ALJ's failure to address the lay evidence supplied by plaintiff's daughter to be harmless.

## V.   CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 30, 2013

                                         /s/
                                       Honorable Jacqueline Chooljian
                                       UNITED STATES MAGISTRATE JUDGE

---

[3] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).